UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OWEN ORON MARTIN,

                Petitioner,         Case No. 2:24-cv-12366
                                               Hon. Linda V. Parker

v.

ADAM DOUGLAS,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan prisoner Owen Oron Martin filed this petition for writ of habeas corpus under 28 U.S.C. §2254.  Petitioner challenges his Wayne Circuit Court jury trial conviction of first-degree murder, MICH. COMP. LAWS § 750.316, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and commission of a felony with a firearm.  MICH. COMP. LAWS § 750.227b.  After careful review of the pleadings and state court record, the Court denies relief because Petitioner's habeas claims are without merit.

## I. Background

The charges against Petitioner arose from the June 23, 2020, shooting of Sylvone Crosby outside his girlfriend's residence in Detroit.

The victim's partner, Mia Jones, testified at trial that she and her daughter lived with Crosby at a house on Lakepointe Street in Detroit. (ECF No. 9-19 at 6.) Jones had known both Crosby and Petitioner, who she referred to by his nickname "OJ," for years. (ECF No. 9-19 at 16-17.) The two men did not get along. A few months prior to the shooting, Crosby spat on Petitioner. (*Id.* at 23.) Crosby and Petitioner also argued on Facebook. (*Id.*) Petitioner posted a photo of Crosby on Facebook labeling him a "rat." (*Id.* at 18-20.) Jones explained that "[t]hey were going back and forth on Facebook for a year before [Crosby] got killed." (*Id.* at 49.)

Jones testified that on the afternoon of the incident, she and Crosby drove to a nearby Krazy Pizza restaurant. As they approached the restaurant, Crosby warned Jones that someone was about to start shooting. Jones ducked her head and heard gunshots. She thought the shots were coming from a truck. Crosby drove the car back to Jones's house instead of parking. (*Id.* at 37-38.)

When they arrived back at Jones's house, Jones walked onto the porch while Crosby stayed back digging for something in the car. (*Id.* at 41.) Jones was on alert because of the shooting. (*Id.*) Jones then "seen a guy with a mask on," that she "assumed was OJ." (*Id.* at 7.)

The man came from a silver truck that Jones thought "was a Durango or something." (*Id.* at 8.) She later told police that the man arrived in a Jeep. (*Id.* at 48.) She could see that the man had dreadlocks sticking out from a mask that was

2

covering his whole face.  (*Id.* at 9.)  Jones testified that, "Sylvone didn't see him until I yelled.  I yelled his name, OJ, please.  I yelled from the porch.  He looked at me, like hesitated and kept shooting."  (*Id.* at 15, 45.)  Crosby ran in one direction and Jones ran off the porch in the opposite direction.  (*Id.* at 15-16.)  The shooter chased after Crosby. (*Id.* at 16.)

After the shooting stopped, Jones saw the shooter get back into the vehicle, and someone else drove it away from the scene.  (*Id.* at 42.)  Jones later found Crosby lying unconscious in her neighbor's backyard.  Jones testified that she was "just running and yelling his name and then somebody yelled and said that he back here." (*Id.* at 25.)

At trial, Jones backed off the certainty of her identification of Petitioner. Jones testified at trial that she was not sure of the shooter's identity because he had a mask on.  (*Id.* at 8.)  She stated she "felt like it was OJ, but he had a mask on, so I don't – you know, I don't know."  (*Id.* at 28.)

Faced with this new uncertainty, the prosecutor questioned Jones about whether she had been threatened.  Jones acknowledged that she received threatening messages related to the case, but she didn't know who they came from.  (*Id.* at 10-11.) When the trial court stated it could not hear Jones's answer, she volunteered that: "I said I got calls and, like, threats.  I don't know, you know, who they were

from because obviously he was in jail or something so I don't know who they were from." (*Id.* at 10.)

This exchange regarding threats forms the basis of two of Petitioner's habeas claims.  His second claim asserts that his confrontation rights were violated by the admission of hearsay testimony that Jones was threatened.  Petitioner's third claim asserts that his trial was rendered fundamentally unfair because the jury heard that Petitioner was in jail before trial.

The prosecutor also elicited testimony from Jones that she spoke with police officers at the scene, told them that Petitioner was the shooter, and that she showed them Petitioner's Facebook page to identify him.  (*Id.* at 11-12.)  A video from an officer's body camera was played for the jury that showed Jones handing an officer her cellphone, indicating Petitioner's photo, and saying, "[h]e right here."  (*Id.* at 12-14.)  She told the officer that it was "OJ Martin." (*Id.* at 14.)  Jones acknowledged that when she saw the shooter come towards her, she shouted "OJ." (*Id.* at 25.)

Detroit Police Officer Lilybeth Castillo-Alejo testified that she was dispatched to the scene of the shooting. She saw a woman crying uncontrollably, and her boyfriend was in a nearby backyard being attended to by other police officers.  The woman was too hysterical to give any useful information to Castillo-Alejo.  (ECF No. 9-17 at 37-51.)

Detroit Police Officer Steven Anouti testified that he attempted to aid the victim.  He had suffered multiple gunshot wounds, and Anouti put chest seals on the wounds.  (*Id.* at 54-55.)  Crosby was later declared dead at a hospital.  He had been shot multiple times.  A recording from Anouti's body camera was played for the jury.  It showed Jones handing over her cellphone that displayed Petitioner's Facebook page.  (*Id.* at 57.)

Detroit Police Officer Jamal Jackson also spoke with Jones at the scene.  (ECF No. 9-18 at 29-31.)  He recalled a June 9th traffic stop when he pulled Petitioner over.  (*Id.* at 32.)  The stop occurred about a quarter or half mile away from the shooting scene.  (*Id.* at 34.)  Petitioner was driving a gray Jeep when he was pulled over.  (*Id.* at 34-36.)

Detroit Officer Jalen Williams testified that he was also present at the prior traffic stop and at the scene of the shooting.  (ECF No. 9-18 at 60.)  Jones showed Petitioner's Facebook photo to Williams at the scene, and Williams recognized Petitioner from the traffic stop.  (*Id.* at 61-65.)  Williams' body camera video of the traffic stop was played for the jury.  (*Id.* at 62.)

Detroit Police Officer Steven Ford testified that he extracted video from a camera across the street from Jones's house that showed the Jeep used by the shooter.  (*Id.* at 54-55.)  The video was played for the jury.  (*Id.* at 56.)  During closing argument, the prosecutor displayed side-by-side photos of the vehicle from the

traffic stop and the vehicle from the shooting, and he argued that they were the same vehicle based on characteristics that could be seen in the photos. (ECF No. 9-20 at 10.)

The jury found Petitioner guilty of the charged offenses, and Petitioner was sentenced to mandatory life for the first-degree murder conviction and lesser terms for the other convictions.

Petitioner filed an appeal of right. His appointed appellate counsel filed an appellate brief in the Michigan Court of Appeals that raised four claims:

> I. The prosecution failed to produce legally sufficient evidence to identify appellant as the perpetrator or prove him guilty beyond a reasonable doubt.
>
> II. Appellant was denied a fair trial and his right to confrontation by the admission of a witness's testimony concerning alleged threats made by an unknown third party.
>
> III. Appellant was denied a fair trial by the unresponsive testimony of the lone eyewitness that appellant was incarcerated during the pendency of the proceedings.
>
> IV. MCL § 769.1K(1)(B)(iii) unconstitutionally violates the separation of powers by assigning tasks to the judicial branch that undermine its credibility and that are constitutionally assigned to the legislature. It violates due process by creating a potential for bias and a risk of actual bias. Appellant argues that the $612 court cost must be vacated.

(ECF No. 9-22, PageID.841.)

The Michigan Court of Appeals affirmed the trial court's decision in an unpublished opinion. *People v. Martin*, No. 362470, 2023 WL 8295093 (Mich. Ct.

App. Nov. 30, 2023.)  Petitioner raised the same claims in the Michigan Supreme Court, but his application for leave to appeal was denied "for lack of merit in the grounds presented."  *People v. Martin*, 513 N.W.2d 1075 (Mich. 2024) (Table.)

## II. Standard of Review

28 U.S.C. § 2254(d)(1) limits review of constitutional claims raised in a federal habeas action where the claims were adjudicated on the merits by the state courts.  Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000.)

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

## III. Discussion

## A. Sufficiency of the Evidence

Petitioner first asserts that insufficient evidence was presented at trial to establish his identity as the perpetrator of the crime. The Michigan Court of Appeals rejected the claim on the merits. The state court noted that evidence of Petitioner's identity was sufficiently supported by Jones's testimony that she had known Petitioner for years and identified him at the time of the shooting, and that she identified him to police officers at the scene immediately after the shooting. The state court also noted that Petitioner's identification was bolstered by evidence that Petitioner and Crosby were engaged in a dispute, and that the shooter used a vehicle consistent with one he was seen driving a few weeks earlier. *Martin*, 2023 WL 8295093, at *1-2.

The state court decision did not unreasonably apply the established Supreme Court standard. "The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). A court reviewing the sufficiency of the evidence on direct appeal asks whether—after viewing the evidence in the light most favorable to the prosecution—any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

8

Under this standard, a reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder, not a reviewing court, to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A reviewing court must defer to the jury for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

This already deferential standard is further limited on federal habeas review. A federal habeas court may grant habeas relief on a sufficiency of the evidence claim only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id*. For a federal habeas court, "the only question under *Jackson* is whether [the state court decision] was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

Petitioner argues that the evidence establishing his identification was insufficient because the only eyewitness, Jones, testified that she merely assumed that Petitioner was the shooter, and she was no longer sure at the time of trial that he

was the shooter.  The jury also heard evidence, however, that during the shooting itself Jones called out Petitioner's name when she saw the shooter.  Jones also acknowledged that she immediately identified Petitioner as the shooter to police officers.  The jury viewed the officer body camera footage of Jones's statements identifying Petitioner as the shooter minutes after the incident.  Finally, the prosecutor suggested through cross-examination that Jones's trial testimony might have been affected by threats she received about the case.

The jury apparently chose to give Jones's uncertainty at trial less weight than what they saw her say to officers minutes after the shooting and what she admitted saying during the shooting itself.  It is the responsibility of the jury and not a court reviewing the legal sufficiency of the evidence to decide what conclusions should be drawn from the evidence admitted at trial.  *Coleman*, 566 U.S. at 651 (citing *Cavazos*, 565 U.S. at 2).  Which part of Jones's testimony to accept as truthful was a question properly left for the jury.  The jurors are the ones who observed Jones's demeanor at trial and viewed her videotaped statements at the scene.  *Marshall*, 459 U.S. at 434; *Tyler v. Mitchell*, 416 F. 3d 500, 505 (6th Cir. 2005).

Apart from Jones's testimony, there was also evidence that Martin drove a similar vehicle to the suspect's vehicle.  In fact, the prosecutor showed the jury a photo of the vehicle Petitioner was driving weeks earlier and a photo of the one seen at the scene of the shooting, and he argued that shared characteristics showed that

they were the same vehicle. The jury was in the best position to determine what the still photos taken from these videos showed. There was also evidence presented that Martin and Crosby disliked one another and feuded on social media before the murder. Petitioner's dispute with the victim is circumstantial evidence that aided in establishing his identity as the shooter. *See, e.g., Moreland v. Bradshaw*, 699 F.3d 908, 917 (6th Cir. 2012).

Viewing all this evidence in a light most favorable to the prosecution, there was sufficient evidence presented to establish beyond a reasonable doubt that Petitioner was the man who shot and killed Crosby. The decision by the Michigan Court of Appeals was not "so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). The claim is therefore without merit.

## B. Testimony that Jones was Threatened

Petitioner's second claim asserts that his right to confront witnesses was denied by the admission of Jones's testimony that she was threatened by unknown callers in relation to the case. The Michigan Court of Appeals found that the claim was without merit because the testimony was not offered for the truth of the matter asserted—that she was in fact threatened—and it was offered only for the non-hearsay purpose of showing the effect it had on Jones. *Martin*, 2023 WL 8295093, at *3.

The Court first notes that to the extent Petitioner continues to assert as he did on direct appeal that the testimony was inadmissible under state evidentiary rules, the claim is not cognizable.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding.  *See Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003).  What is or is not hearsay evidence in a state court trial is governed by state law. *See Johnson v. Renico*, 314 F. Supp. 2d 700, 705 (E.D. Mich. 2004) (internal citations omitted.)

As for the federal aspect of the claim, it was reasonably rejected by the state court for two reasons.  First, only out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause.  *See Crawford v. Washington*, 541 U.S. 36 (2004).  The Confrontation Clause is not implicated when non-testimonial hearsay is at issue.  *See Davis v. Washington*, 547 U. S. 813, 823-26 (2006). Testimonial statements typically involve a solemn declaration or affirmation made for the purpose of establishing or proving some fact, such as a formal statement made to government officers.  *Davis*, 547 U.S. at 826.  An anonymous threat made to the eyewitness of a crime is in no way a testimonial statement.  Its admission therefore did not implicate the Confrontation Clause.

Furthermore, as the state court found, Jones's testimony that she was threatened was not offered to prove the truth of the matter asserted, but rather it was offered in an attempt to explain why she backed-off her identification of Petitioner as the shooter at trial.  The admission of an out of court statement that is not offered for the truth of the matter asserted does not violate the Confrontation Clause.  *See Smith v. Arizona*, 602 U.S. 779, 785 (2024); *Kennedy v. Warren*, 2012 WL 254102 at *13 (E.D. Mich. Jan. 27, 2012) ("the prosecution did not introduce the evidence of these threats to prove that petitioner had, in fact, threatened Pamela Smith, but instead offered this evidence to provide a reason why Smith did not initially implicate petitioner in the victim's murder.").

The Michigan Court of Appeals therefore reasonably rejected Petitioner's second claim.

## C. Testimony that Petitioner was in Jail

Petitioner's third claim asserts that his trial was rendered fundamentally unfair in violation of due process when Jones made an unsolicited remark on the stand revealing that Petitioner was in jail while awaiting trial.  The statement was made when Jones said that the threats she received must not have come from Petitioner because he was in jail.  The Michigan Court of Appeals found that Petitioner was not entitled to a new trial on this basis because the statement was unsolicited, isolated, and the jury was otherwise aware that Petitioner was a convicted felon

because he was charged with felon in possession of a firearm. *Martin*, 2023 WL 8295093, at *4.

"[T]he Supreme Court has defined 'very narrowly' the category of infractions that violate 'fundamental fairness.'" *Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir. 2007) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Brief, unsolicited, potentially prejudicial remarks made by a witness usually do not merit relief. *See, e.g., United States v. Martinez*, 430 F.3d 317, 337 (6th Cir. 2005) (police officer's unsolicited testimony that defendant had previous arrests did not warrant new trial); *Zuern v. Tate*, 336 F.3d 478, 485-86 (6th Cir. 2003) (lay witness's unsolicited testimony that defendant was a "crazy man" who won't hesitate to murder again did not warrant new trial.)

Here, as reasonably found by the state court, Jones's statement that Petitioner must not have been the person to threaten her because he was in jail was a spontaneous, brief, and isolated reference to the fact that Petitioner was in jail prior to trial. The subject was not mentioned again, and in any event, the jury was properly informed that Petitioner had a criminal record because he was charged with felon in possession of a firearm. The Michigan Court of Appeals reasonably rejected this claim.

D. Assessment of Costs

14

Petitioner's final claim asserts that he was erroneously assessed costs in violation of state law following trial.  Aside from not raising a federal claim, the claim is not cognizable because it does not challenge the fact or duration of Petitioner's custodial sentence.  *See Washington v. McQuiggin*, 529 F. App'x 766, 773 (6th Cir. 2013); *Michaels v. Hackel*, 491 F. App'x 670, 671 (6th Cir. 2012).

## IV. Conclusion

Because none of Petitioner's claims merit relief, the petition will be denied. Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2.) To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted.)  The Court finds that reasonable jurists would not debate the resolution of any of Petitioner's claims.  The Court will therefore deny a certificate of appealability.

## V. Order

15

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus and **DENIES** a certificate of appealability.

**SO ORDERED.**

                                        s/ Linda V. Parker
                                        LINDA V. PARKER
                                        U.S. DISTRICT JUDGE
Dated: January 15, 2026


I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, January 15, 2026, by electronic and/or U.S. First Class mail.

                                        s/Aaron Flanigan
                                        Case Manager